OPINION OF THE COURT
David H. Pfeffer, J.
This matter comes on to the court for decision following extensive briefing and an evidentiary hearing.
By this action, the Village of Roslyn Harbor (the Village) seeks to enforce its soliciting ordinance against the defendant. The defendant is an organization that regularly canvasses homeowners on Long Island to discuss environmental issues, seeking support for its positions and further seeking financial contributions to enable it to continue its activities.
The Village has in place as Local Law No. 1 of 1983 certain regulations regarding peddling, soliciting and canvassing. Although the local law has provisions covering both commercial and noncommercial activities, only sections 6, 7 and 8 are at issue here.
Insofar as relevant to this case, section 6 makes it unlawful for any person or organization "to * * * canvass or to distrib *775 ute handbills, pamphlets or other written material or to solicit donations * * * or financial assistance of any kind * * * upon private property, by house to house canvass * * * without a license previously issued pursuant to this Local Law or to enter upon the premises of any Village resident who has noted objection to such entry and whose address has been provided * * * pursuant to Section 7 of this Local Law.”
Subdivisions (A), (B) and (C) of section 6 provide the details of how the license may be obtained, including the provision for payment of a $25 processing fee. Subdivision (D) provides certain restrictions to be contained in any such license granted by the Village. The only restrictions relevant here are:
"(i) All activity must be conducted between the hours of 9:00 A.M. and 5:00 P.M., Mondays through Fridays, only;”
"(v) All persons conducting any activity on behalf of any organization * * * shall not enter upon the premises of those residents of the Village who have expressed a desire in writing not to be visited, canvassed * * * or solicited by such persons * * * and whose addresses have been provided pursuant to Section 7 hereof.”
Section 7 requires the Village to maintain a list of residents "who have expressed a desire not to be visited by any person * * * for the purpose of * * * canvassing or distributing handbills, pamphlets or other written material or soliciting donations * * * or financial contributions of any kind.” Copies of the list are to be provided to all licensees who are to be required to "agree not to visit the premises so enumerated in the list provided to it by the Village.”
Section 8 provides the penalty for each violation of the local law.
Defendant was charged with violating section 6 by soliciting within the Village without the required license and also for visiting residences on the list of addresses maintained by the Village under section 7.
At the hearing herein, defendant, appearing by counsel, stipulated that it had conducted solicitation activities within the Village without having first received a license; that some, if not all of the solicitations occurred between 5:00 p.m. and 9:00 p.m.; and that one or more solicitations occurred at residences of villagers whose addresses were on the list maintained by the Village pursuant to section 7. The People agreed that defendant never received a copy of the list although it is *776 clear that defendant was aware of the content of Local Law No. 1 and was aware that a list existed of residents who did not wish to be solicited.
Defendant contended that its failure to obtain a license is excused by the fact that insofar as the local law requires licensees to agree to abide by the restriction as to hours when solicitation may occur and to refrain from soliciting at homes on the section 7 list, it violates the free speech provisions of the First Amendment of the US Constitution and therefore cannot be enforced.
A. Solicitation Is Constitutionally Protected Speech
It is settled law, after countless challenges, that the Supreme Court of the United States considers door-to-door canvassing or solicitation to be within the First Amendment guarantees of free speech. See the cases discussed in Mr. Justice White’s opinion for the Supreme Court in Village of Schaumburg v Citizens For A Better Envt. (444 US 620, 628-633 [1980]). The same authorities hold that a municipality like the Village has the right to regulate solicitation "in such a manner as not unduly to intrude upon the rights of free speech.” (444 US, at 633.) It devolves upon this court to consider whether the "list” provision and the "hours” provision individually or in combination cause the local law to unduly intrude upon the rights of free speech.
B. The List Requirement
The Supreme Court has made clear that the right to free speech in the solicitation context is fully subordinate to the homeowner’s right to and expectation of privacy. See, for example, Frisby v Schultz (487 US 474, 485 [1988]): "In all such cases, we have been careful to acknowledge that unwilling listeners may be protected when within their own homes. * * * [W]hen we invalidated a ban on door-to-door solicitation * * * we did so on the basis that the 'home owner could protect himself from such intrusion by an appropriate sign "that he is unwilling to be disturbed.” ’ * * * There simply is no right to force speech into the home of an unwilling listener.”
That the State has the right to legislate to protect the residents’ right to be free from unwanted intrusions into their homes is beyond question. "[A] special benefit of the privacy all citizens enjoy within their own walls, which the State may *777 legislate to protect, is an ability to avoid intrusions. * * * [Individuals are not required to welcome unwanted speech into their own homes and * * * the government may protect this freedom.” (Frisby v Schultz, 487 US, supra, at 484-485.)
Roslyn Harbor has chosen to legislate in this area by compiling a list of residents who do not wish to be solicited in their homes. The list at issue was dated November 15, 1989, less than one year prior to the alleged violations here at issue. It appears to have been compiled on the basis of communications from Village residents in response to a letter of inquiry from the Village. Any resident seeking to have his or her home address placed on the list was required to fill out a form and mail it back to the Village Clerk. There is no record of any pressure or follow-ups to insure that any addresses were or were not placed on the list.
The law is clear that a municipality is free to enact laws whose effect is to require solicitors or canvassers to obey "keep out”, "no solicitation” or "no trespassing” signs posted on a homeowner’s premises. (See, Martin v City of Struthers, 319 US 141 [1942]; Association of Community Orgs. for Reform Now v City of Frontenac, 714 F2d 813, 819 [8th Cir 1983]; New Jersey Citizen Action v Edison Twp., 797 F2d 1250, 1258-1259 [3d Cir 1986], cert denied sub nom. Township of Piscataway v New Jersey Citizen Action, 479 US 1103 [1987].) Given the semirural and large lot characteristics of Roslyn Harbor, and the local ordinance proscribing the posting of signs of any type, an ordinance providing for residents to list their desires to avoid solicitation and requiring would-be solicitors to observe the list and respect the expressed wishes of the listees is a reasonable exercise of governmental power to legislate to protect the privacy of Village residents.
The court does not accept defendant’s agreement that signs will be less restrictive, thereby rendering the "list” requirement unconstitutional. Notwithstanding language in earlier cases, the Supreme Court has now made it clear that "least-restrictive-alternative analysis is wholly out of place.” (Ward v Rock Against Racism, 491 US 781, 798-799, n 6 [1989].) Nor is there any evidence that a list as opposed to a sign would have any greater deterrent effect on defendant’s ability to solicit those who do not object to solicitation. (See, e.g., Rowan v Post Off. Dept., 397 US 728 [statute may provide for written notice to an advertiser that no advertisements are to be sent to a particular address].)
*778 This is not to say that the list once compiled is sufficient for all times. Given possible changes in residents’ feelings and given the potential for residents to move out of the Village after sale or rental of their homes to others, First Amendment considerations would require that the Village use reasonable efforts to update its list with reasonable consistency or on request of specific residents. At least once every two years would seem a reasonable period for updating unless more frequent updating would appear warranted to the Village Board because of significant conditions then known to or brought to its attention.*
Since the list in existence at the time of the alleged violations herein was relatively current, there is no merit to the constitutional challenge to the list provision set forth by the defendant.
C. The Hours Provision
A number of court decisions have held that hours provisions even less restrictive than those here at issue are unconstitutional restraints on free speech. Thus, in City of Watseka v Illinois Pub. Action Council (796 F2d 1547 [7th Cir 1986]), the Seventh Circuit Court of Appeals held as unconstitutional a city ordinance proscribing solicitation except between the hours of 9:00 a.m. and 5:00 p.m., Monday through Saturday. The Supreme Court affirmed the decision without opinion (479 US 1048, reh denied 480 US 926 [1987]). The Seventh Circuit’s rationale was that the specified hours limitation was not shown to have been narrowly tailored to achieve Watseka’s legitimate objectives. (796 F2d, at 1558.)
The Watseka decision (supra) does not by itself require a holding that the Village’s hour restrictions are per se unconstitutional. The Supreme Court has characterized its affirmance in Watseka as not requiring any more to be read into that decision than was essential to sustain the judgment, and pointing out that on the record of that case, "the regulation at issue did not serve to further the stated governmental interests and did not leave open alternative channels of communication.” (Ward v Rock Against Racism, 491 US, at 799, n 6 [1989], supra.)
*779 In this case, the evidence adduced on behalf of the Village establishes that the limited hours provision, 9:00 a.m. to 5:00 p.m., was enacted by the Village Board because (a) the Board believed, based upon information purportedly provided by the police, that a preponderance of residential burglaries occurred between 5:00 p.m. and 10:00 p.m., and (b) that most residents "came home after a hard day’s work” between 5:00 and 7:00 p.m., and wanted their privacy. The Village Board’s objective in enacting the local law was to protect against crime and to protect privacy.
Consistent with the testimony adduced by the People, defendant introduced evidence that only about one third of the homeowners were at home in the hour before 5:00 p.m., and that a 5:00 p.m. restriction would have a devastating effect on defendant’s canvassing program.
Prevention of crime and protection of privacy are both proper governmental objectives. As a regulation of the time of protected speech, the law requires that any restrictions be "narrowly tailored to serve the government’s legitimate, content-neutral interests but * * * need not be the least restrictive or least intrusive means of doing so.” (Ward v Rock Against Racism, 491 US, at 798.) On the other hand, regulations on expression may not be so intrusive that "a substantial portion of the burden on speech does not serve to advance” the government’s legitimate interests. (Supra, at 799.)
There is no showing that all of the Village residents demand freedom from all forms of solicitation. Yet, the impact of the present time restriction would effectively preclude defendant and others from exercising their rights of free speech at the homes of those residents who might be interested in receiving canvassers and who might be potential contributors. The court does not feel that the privacy interest can be utilized to this end. A statute should "not burden the first amendment rights of willing speakers and willing listeners.” (Troyer v Town of Babylon, 483 F Supp 1135, 1139 [ED NY 1980].)
The legitimate privacy interests of Village residents can be exercised by the "list” regulation, thereby leaving to individual choice the issue of privacy. Effectively closing off any solicitation in the guise of a privacy regulation, however well intentioned, creates an unreasonable and unnecessary burden both on potential soliciting activities as well as upon residents who may wish to hear whatever message may be offered. *780 Accordingly, this particular hours restriction cannot be sustained on a privacy basis.
Protection of Village residents against crime cannot justify that portion of the local law that precludes canvassing or soliciting at any time on a Saturday or Sunday. There is no evidence that crime is somehow greater during the 9:00 a.m. to 5:00 p.m. hours on weekends than on weekdays. Accordingly, there is insufficient evidence to support a prevention of crime basis for sustaining the outright ban on soliciting on weekends. Accordingly, at least that portion of the hours restriction is unconstitutional under existing Supreme Court precedents.
While not controlling, the Seventh Circuit’s decision in City of Watseka (supra) is highly persuasive on the validity of the remainder of the hours restriction. There is no question that the Board of Trustees of Roslyn Harbor acted conscientiously and in all good faith in adopting the time restriction in the belief that they were deterring or preventing crime. The intent in Watseka was the same, but the court there criticized the lack of substantive proof that the restrictions were warranted by the crime statistics. (796 F2d, at 1555.) Here, this court has not received the benefit of the actual crime statistics that may have influenced the police report or the opinion of the Village Board. The court has the duty to look at the actual data and weigh the potential crime deterrence feature of the ordinance against what may be the alleged devastation of defendant’s Supreme Court protected rights to canvass and/ or solicit within the Village. The Village had the burden of establishing a factual basis to justify its ordinance in this situation. The court is not satisfied that the quantity of firsthand evidence, as opposed to opinion is sufficient to meet that burden. There is no statistical data correlating the incidence of crime within the Village with specific hours or even with time of the year. Thus, it is not clear whether daylight hours between 5:00 p.m. and 8:00 or 9:00 p.m. during May through September, for example, pose the crime risk that the ordinance is supposed to alleviate.
The court can see a reasonable basis for barring solicitation as it begins to get dark. Thus an ordinance barring solicitation after some fixed occurrence such as sunset might have some reasonable connection with alleviating concerns over crime. But on this record, there is nothing to indicate there is any greater crime danger at 6:00 p.m. in June when it is light and the sun is shining, as compared to 4:00 p.m. in December when *781 the sun is beginning to set and dusk is impending. On this record, the time restriction cannot and does not pass constitutional requirements. (City of Watseka v Illinois Pub. Action Council, 796 F2d 1547, supra.)
D. The License Requirement
The law is clear that the Village has the power to institute reasonable licensing requirements as a condition to solicitation and canvassing within the Village. It has been stipulated and the court finds independently that the ordinance is content-neutral. The only infirmity in the Village procedure is the restriction contained in the license that solicitation be limited to 9:00 a.m. to 5:00 p.m., Mondays through Fridays. That restriction, we have now determined, is unenforceable. The remainder of the licensing ordinance and restrictions are clearly within the proper exercise of governmental authority and is not violative of any free speech guarantees of the First Amendment of the US Constitution.
At the hearing, and in the pretrial memorandum, no reference was made to the $25 license fee as being allegedly unconstitutional. Indeed, at the hearing, the court attempted to elicit all bases for alleged unconstitutionality and no reference was made to a licensing fee question. In its posthearing brief which was to be limited to the issues as previously outlined and which defendant’s counsel acknowledged was not "appropriate to address a new issue”, defendant for the first time questioned the propriety of the license fee. The issue was not timely raised and has therefore been waived. Were the objection timely raised by defendant, the court feels the challenge raised by defendant is not persuasive and would have been dismissed. The court would consider the $25 fee to be a nominal charge that is not constitutionally prohibited.
E. Defendant’s Activities
It is stipulated that defendant failed to obtain a license under the Village ordinance but nonetheless solicited door to door within the Village. The evidence further establishes that prior to doing so, defendant was made aware of Local Law No. 1, including its provision of a list of homes not to be solicited. Defendant did not bring an action seeking to invalidate the local law but took it upon itself to violate its terms by soliciting without the required license. Since the court finds that the "list” requirement and the identification require- *782 merits of Local Law No. 1 were every bit as important in the licensing scheme as the hours provision, the court finds the licensing requirement to have been valid and enforceable, notwithstanding the unenforceability of one of the restrictions listed on the license. In holding that the hours restriction is severable from the remainder of Local Law No. 1, the court notes that the ordinance does not expressly require an applicant for license to agree in advance to abide by the hours restriction. Hence, an applicant could apply for a license under the ordinance without promising to abide by the hours restriction.
Since this is a prosecution for violation of a quasi-criminal ordinance, the severability provisions of criminal precedents apply. The unconstitutionality of one part of a criminal statute does not necessarily render the entire statute void. What is left may be enforced unless it is evident that the Legislature would not have enacted those remaining portions without the part being discarded. (People v Liberta, 64 NY2d 152, 171-172 [1984].) Here it is clear that the licensing provisions can be fully operative and viable in the absence of the hours restriction and the court holds that it may be so enforced.
The concern of the Village Board was to restrict door-to-door soliciting to responsible, identifiable parties and to insure the privacy of those individuals who did not care to be solicited at all. In holding the hours provision to be severable, we do not increase the coverage of the ordinance or create any violation that was not a violation initially. As a result of the severability of the invalid hours restriction, and the enforceability of the remainder of Local Law No. 1, the court finds defendant guilty of violating the licensing provisions of section 6 by soliciting in the Village without first applying for and receiving the required license. Since the ordinance as written apparently proscribes soliciting at homes listed pursuant to section 7, only by those who have been given a copy of the list, and no such copy was given to defendant, defendant is not guilty of violating the "list” provision of the ordinance.
Defendant is ordered to appear for sentencing on May 20, 1991 at 7:30 p.m.

 The court does not give any credence to posthearing brief allegations by defendant that residents at certain addresses on the "list” in fact were receptive and responded to the solicitation by donating funds. No evidence on that issue was adduced at the hearing.